OKUMA AMERICA CORPORATION, PLAINTIFF v. PHILLIP N. BOWERS, DEFENDANT

No. COA06-472

(Filed 2 January 2007)

**Employer and Employee— covenant not to compete—factual issues concerning reasonableness—12(b)(6) not appropriate**

A motion to dismiss for failure to state a claim in a covenant not to compete case should not have been granted. The enforceability of the covenant rested on factual questions such as whether the geographic effect of the client-based restrictions was excessive in light of defendant's contacts with customers, the nature of his duties, the level of his responsibilities, the scope of his knowledge, and other issues relating to how closely the geographic limits fit with defendant's work for plaintiff.

Appeal by plaintiff from order entered 29 November 2005 by Judge Richard D. Boner in Superior Court, Mecklenburg County. Heard in the Court of Appeals 14 November 2006.

*Robinson, Bradshaw & Hinson, P.A., by Douglas M. Jarrell and Jonathan C. Krisko, for plaintiff-appellant.*

*James, McElroy & Diehl, P.A., by Gary S. Hemric, Preston O. Odom, III, Adam L. Ross, and Fred P. Parker, IV, for defendant-appellee.*

WYNN, Judge.

When considering the enforceability of a covenant not to compete, a court examines the reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business interests.[1] Here, Plaintiff Okuma America Corporation appeals the trial court's grant of Defendant Phillip Bowers's Rule 12(b)(6) motion, finding that the covenant in question was "overly broad and unenforceable as a matter of law." Because we find that the covenant's enforceability in this case rests on questions of fact and cannot be determined as a matter of law, we conclude that the allegations of Okuma America's complaint, when taken as true, did state a claim for which relief might be granted on some legal theory. We therefore reverse and remand.

The record shows that Mr. Bowers worked for Okuma America, a leader in the production of machine tooling technology, for approximately seventeen years, the last two years as Vice President for Customer Service. In that position, Mr. Bowers oversaw more than twenty-five personnel and maintained relationships with Okuma America's more than thirty distributors in forty locations. Okuma America further claims that Mr. Bowers served on the Corporate Planning Committee, a small group of six senior executives charged with directing major strategic and operational decisions for the company as a whole.

In 2002, Mr. Bowers signed an Employment Agreement with Okuma America agreeing that, in exchange for additional bonuses, separation pay, and other incentives, for the six months following the end of his employment with Okuma America, he would not

> Become employed by (as an officer, director, employee, consultant or otherwise), or otherwise become commercially interested in or affiliated with (whether through direct, indirect, actual or beneficial ownership or through a financial interest), a

---

1. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 407, 302 S.E.2d 754, 763 (1983).

COMPETITOR, unless Employee accepts employment with a COMPETITOR in an area of the COMPETITOR'S business which does not compete with the Company. For purposes of this Agreement, a COMPETITOR shall be defined as any entity operating as a manufacturer, distributor, or seller of machine tools that are substantially similar to machine tools manufactured, distributed or sold by the Company.

During the same six-month period, Mr. Bowers agreed not to "[s]olicit or attempt to solicit . . . the business of any of the Company's clients or customers for which Employee has rendered any services." Furthermore, the agreement stated that

In recognition of the broad geographic scope of the Company's business and of the ease of competing with that business in any part of the United States, the restrictions on competition set forth herein are intended to cover the following geographic areas: [list: **Note: this is limited by law to areas in which the Company does business**].

(Bold in original).

At the beginning of January 2005, Okuma America senior management informed Mr. Bowers of their decision to transfer him from a managerial role to one limited to analytical duties; his salary and other benefits would remain roughly the same, but he would no longer supervise employees in a managerial capacity. Rather than accept the transfer, which he considered to be a demotion, Mr. Bowers decided to resign from the company, effective 1 February 2005. Although not required to do so, Okuma America agreed to make separation payments to Mr. Bowers, and Mr. Bowers signed a release as to all claims, as well as an agreement to maintain as confidential information that was proprietary to Okuma America.

In May 2005, three months after leaving Okuma America, Mr. Bowers became the Vice President for Customer Service at DMG America, Inc., a direct competitor of Okuma America in the machine tooling industry. Thereafter, Okuma America sent Mr. Bowers a cease-and-desist letter, informing him that he was violating the terms of the covenant not to compete in his Employment Agreement. After getting no response from Mr. Bowers, on 17 June 2005, Okuma America brought this action for breach of the agreement. Mr. Bowers responded with a motion to dismiss filed on 4 October 2005. On 29 November 2005, Superior Court Judge Richard D. Boner granted the

motion to dismiss based on Rule 12(b)(6), for the failure to state a claim for which relief could be granted. Okuma America now appeals that order, arguing that the trial court erred in dismissing its complaint because it adequately pleaded a breach of a valid and enforceable covenant not to compete.[2]

We note at the outset that appellate review of the dismissal of an action under Rule 12(b)(6) is subject to more stringent rules than other procedural postures that come before us. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005); *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 279, 530 S.E.2d 878, 880 (2000). Here, we are presented with the question of whether, as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief can be granted under some legal theory. *See id.* We therefore accept as true the well-pleaded factual allegations of the complaint and review the case *de novo* "to test the law of the claim, not the facts which support it." *White v. White*, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979) (quotation and citation omitted); *see also Locklear v. Lanuti*, 176 N.C. App. 380, 384, 626 S.E.2d 711, 714 (2006). Thus, we examine "whether the non-compete agreement is enforceable as a matter of law. If not, then the trial court properly granted [the] motion to dismiss the claim." *Baskin*, 138 N.C. App. at 279, 530 S.E.2d at 880; *but see Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 224, 367 S.E.2d 647, 652 (1988) (on a Rule 12(b)(6) motion, declining to consider whether a covenant not to compete was unenforceable as a matter of law after finding that the facts alleged would not have constituted a breach of the language of the covenant itself).

Under North Carolina law, a covenant not to compete is valid and enforceable if it is (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and, (5) designed to protect a legitimate business interest of the employer. *Baskin*, 138 N.C. App. at 279, 530 S.E.2d at 881; *see also A.E.P. Indus. v. McClure*, 308 N.C. 393, 402-03, 302 S.E.2d 754, 760 (1983). Here, the first three criteria are not in dispute; the covenant meets all three of those requirements, and Mr. Bowers does not claim otherwise. Our inquiry thus focuses on whether the terms are reasonable as to time and territory and whether they were designed to protect a legitimate business interest.

---

2. We observe that the grant of the Rule 12(b)(6) motion was based only on the unenforceability of the covenant not to compete as a matter of law, not whether a breach of its terms actually occurred. As such, the question of a breach is not before us on appeal.

**OKUMA AM. CORP. v. BOWERS**

[181 N.C. App. 85 (2007)]

When considering the time and geographic limits outlined in a covenant not to compete, we look to six overlapping factors:

> (1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 312, 450 S.E.2d 912, 917 (1994), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 251 (1995).

Additionally, the time and geographic limitations of a covenant not to compete must be considered in tandem, such that "[a] longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*." *Baskin*, 138 N.C. App. at 280, 530 S.E.2d at 881 (citing *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 158 S.E.2d 840 (1968)). "Although either the time or the territory restriction, standing alone, may be reasonable, the combined effect of the two may be unreasonable." *Id.* Nevertheless, the scope of the geographic restriction must not be any wider than is necessary to protect the employer's reasonable business interests. *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 638, 568 S.E.2d 267, 273 (2002) (citing *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 229, 393 S.E.2d 854, 857 (1990)). Thus, to show reasonableness of a geographic restriction, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Hartman*, 117 N.C. App. at 312, 450 S.E.2d at 917. Our Supreme Court has also recognized the validity of geographic restrictions that are limited not by area, but by a client-based restriction. *See, e.g., United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 660, 370 S.E.2d 375, 386 (1988).

The covenant not to compete in the instant case barred Mr. Bowers from employment with a direct competitor of Okuma America, or from soliciting business from Okuma America's customers, for the six-month period following the termination of his employment with Okuma America. That six-month restriction is well within the established parameters for covenants not to compete in this State. *See Baskin*, 138 N.C. App. at 280, 530 S.E.2d at 881 ("A five-year time restriction is the outer boundary which our courts have considered reasonable . . ."); *see also Precision Walls*, 152 N.C. App.

at 638, 568 S.E.2d at 273 (finding a one-year time restriction to be reasonable); *Harwell Enterprises, Inc. v. Heim*, 276 N.C. 475, 481, 173 S.E.2d 316, 320 (1970) (upholding a two-year restriction). Thus, in determining the overall reasonableness of the covenant not to compete in question, we evaluate the geographic restriction in light of the relatively short, six-month duration of the time restriction.

The language in the covenant not to compete states that the agreement's restrictions are limited to "areas in which [Okuma America] does business," suggesting that it is a client-based, rather than geographic, limitation. Nevertheless, because Okuma America operates throughout both North and South America, the geographic effect of the restriction is quite broad. However, when taken in conjunction with the six-month duration, it is not *per se* unreasonable in light of our courts' past rulings. *See Heim*, 276 N.C. at 481, 173 S.E.2d at 320 (upholding a nationwide restriction); *Clyde Rudd & Assocs., Inc. v. Taylor*, 29 N.C. App. 679, 684, 225 S.E.2d 602, 605 (upholding a multistate restriction due in part to insufficient findings of fact as to scope of employee's responsibilities), *disc. review denied*, 290 N.C. 659, 228 S.E.2d 451 (1976); *but see Baskin*, 138 N.C. App. at 283, 530 S.E.2d at 883 (affirming Rule 12(b)(6) dismissal of a three-year client-based restriction covering forty-one states and four foreign countries that had practical effect of five-year limitation). Rather, we must determine whether the scope is in fact "any wider than is necessary to protect the employer's reasonable business interests," *Precision Walls*, 152 N.C. App. at 638, 568 S.E.2d at 273, in light of where Okuma America's customers are located, and if the scope is necessary to maintain its existing customer relationships.

In North Carolina, "[t]he protection of customer relations against misappropriation by a departing employee is well recognized as a legitimate interest of an employer." *Baskin*, 138 N.C. App. at 280, 530 S.E.2d at 881 (citing *Kuykendall*, 322 N.C. at 651, 370 S.E.2d at 381). Additionally, a covenant is reasonably necessary for the protection of a legitimate business interest "if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, *or* enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers." *Kuykendall*, 322 N.C. at 650, 370 S.E.2d at 380 (citing *McClure*, 308 N.C. at 408, 302 S.E.2d at 763) (internal quotation and citations omitted)).

This Court has also held that restrictions barring an employee from working in an identical position for a direct competitor are valid

and enforceable. *See Precision Walls*, 152 N.C. App. at 638-39, 568 S.E.2d at 273 (finding a one-year, two-state restriction against employment with a direct competitor to be reasonable and within a legitimate business interest); *but see VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508-09, 606 S.E.2d 359, 362-63 (2004) (finding a two-year restriction against employment with "similar businesses" throughout the Southeast to be unreasonable); *Henley Paper Co. v. McAllister*, 253 N.C. 529, 534-35, 117 S.E.2d 431, 434 (1960) (finding a non-compete covenant overbroad and unenforceable where it "excludes the defendant from too much territory and from too many activities"). Thus, a covenant not to compete is

> overly broad in that, rather than attempting to prevent [the former employee] from competing for [] business, it requires [the former employee] to have no association whatsoever with any business that provides [similar] services. . . . Such a covenant would appear to prevent [the former employee] from working as a custodian for any "entity" which provides [similar] services.

*Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920.

In the instant case, Okuma America's complaint alleges that Mr. Bowers's position as Vice President of Customer Service made him one of the six most senior executives in the company. In that role, Okuma America asserts that Mr. Bowers "participated . . . in the most critical and strategic decisions made by the company," in addition to becoming familiar with and administering the company's customer service blueprint and organization, such that the client-based restriction, even if broad in geographic scope, was necessary to protect its legitimate business interest. Okuma America further alleges, and Mr. Bowers does not dispute, that he took an identical position—as Head of Customer Service—with DMG America in its business unit that sells and services machine tools. When taken as true, as we must when considering an appeal from the grant of a Rule 12(b)(6) motion, these allegations are sufficient to show that Okuma America was acting to protect a legitimate business interest when it drafted the terms of the covenant not to compete.

Moreover, the language of the covenant not to compete does not bar Mr. Bowers from any or all employment in the field of either customer service or machine tooling technology. Rather, he is barred only from employment with a direct competitor, "unless . . . in an area of the competitor's business which does not compete with [Okuma America]." By allowing for employment with a direct

competitor in a capacity unrelated to Okuma America's business, the terms thread the needle between those in *Precision Walls*, which were found to be valid and ·enforceable, and those in *VisionAIR*, which were struck down. *Precision Walls*, 152 N.C. App. at 638-39, 568 S.E.2d at 273; *VisionAIR*, 167 N.C. App. at 508-09, 606 S.E.2d at 362-63. Additionally, although the geographic effect of the client-based restriction in the case at hand is broader than that in either *Precision Walls* or *VisionAIR*, the six-month time period is shorter in duration.

According to the facts alleged in the complaint, Mr. Bowers held a much more senior position than those in question in either *Precision Walls* or *VisionAIR*. In light of our ruling in *Hartman*, to consider "the nature of the employee's duty and his knowledge of the employer's business operation," 117 N.C. App. at 312, 450 S.E.2d at 917, when examining the time and geographic restrictions of a covenant not to compete, we are unable to conclude that a covenant restricting employment for six months with a direct competitor in a related capacity, even with a geographic scope potentially extending throughout North and South America due to the client-based restrictions, is overly broad and unenforceable as a matter of law. In this case, the enforceability of the covenant not to compete rests on factual questions such as whether the geographic effect of the client-based restriction is excessive in light of Mr. Bowers' actual contacts with customers, the nature of his duties, the level of his responsibilities, the scope of his knowledge, and other issues relating to how closely the geographic limits fit with Mr. Bowers's work for Okuma America.

Accordingly, we hold that, when taken as true, Okuma America's complaint stated a claim for which relief might be granted.

Reversed and remanded.

Judge BRYANT concurs.

Judge STEPHENS concurs prior to 31 December 2006.