Evo Corp. v. Poling, 2015 NCBC 80.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

EVO CORPORATION,

        Plaintiff,

        v.

DOUGLAS A. POLING; and
AMANDA V. TYSON,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 4230

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTION FOR
PRELIMINARY INJUNCTION**

{1}     THIS MATTER is before the Court on Plaintiff's Motion for Preliminary Injunction ("Motion"). Based upon the Findings of Fact and Conclusions of Law below, the Motion is GRANTED IN PART and DENIED IN PART.

*Kilpatrick Townsend & Stockton LLP by Richard Keshian and Elizabeth L. Winters for Plaintiff.*

*Womble Carlyle Sandridge & Rice, LLP by Brent F. Powell and James A. Dean for Defendant Douglas A. Poling*

*Fitzgerald Litigation by Andrew L. Fitzgerald for Defendant Amanda V. Tyson.*

Gale, Chief Judge.

## I.    FINDINGS OF FACT

{2}     The Court makes the following Findings of Fact solely for purposes of resolving the present Motion. These findings are without prejudice to inconsistent findings in a subsequent evidentiary proceeding. The findings are based on the verified complaint, affidavits, deposition testimony, and documents of record.

{3}     Plaintiff Evo Corporation ("Evo") instituted this action by filing a Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction on July 10, 2015, against Defendant Douglas A. Poling ("Poling") and

Defendant Amanda V. Tyson ("Tyson"). That same day, the Hon. David L. Hall issued a temporary restraining order ("TRO") against both Defendants and scheduled the matter for a hearing on Evo's motion for preliminary injunction on July 22, 2015. On July 20, 2015, North Carolina Supreme Court Chief Justice Mark Martin designated the matter as a complex business case, and the case was assigned to the undersigned on July 21, 2015. On July 24, 2015, the parties consented to the extension of the TRO until August 13, 2015, as well as to expedited discovery. The Court heard the Motion on August 13, 2015, and at the conclusion of the hearing, Poling agreed to extend the TRO for seven days to allow the Court to further consider the Motion. The Court announced at the hearing that it would not enter a preliminary injunction against Tyson and that the TRO against her would be allowed to expire. The Motion is now ripe for determination.

{4} Evo is a North Carolina corporation, with a principal place of business in Winston-Salem, North Carolina. It maintains other offices, including in Chattanooga, Tennessee and Jacksonville, Florida. Evo's services extend across a range of specialized environmental and industrial services, which may be identified as five separate functions. Those five functions are specified in and quoted from the Covenant identified below.

{5} Poling is a former Evo employee. Evo hired Poling on August 13, 2012. He became Evo's Industrial Services Manager, with management oversight of Evo's industrial services operations from its facilities in North Carolina, Tennessee, and Florida. Although Poling primarily had direct client contact only with customers serviced from Evo's North Carolina facility, his management oversight gave him knowledge, or access to knowledge, regarding customers of the other facilities and their needs. Poling was directly involved in identifying or soliciting new customers for services to be rendered in Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia.

{6} Evo's industrial services are provided onsite at the customer's location.

{7} Poling signed an Employment and Confidentiality Agreement ("Employment Agreement") and a Covenant Not to Compete and Non-Solicitation

Agreement ("Covenant") on August 13, 2012, in connection with and as a part of the terms of his initial employment. The terms of these agreements were reaffirmed on October 21, 2013, when Poling was promoted to the position of Industrial Services Manager. These agreements had not been terminated and were in force when Evo terminated Poling on March 27, 2015.

{8}     Tyson is a former Evo employee. Tyson worked from Evo's Winston-Salem facility as Poling's administrative assistant. Evo hired Tyson on December 30, 2013. Tyson did not execute a covenant not to compete, but she did sign a Confidentiality Acknowledgement ("Acknowledgement") contemporaneously with and as a part of the terms of her initial employment.

{9}     The Covenant Poling signed includes several paragraphs that are significant to the present Motion. Paragraph A.1 list the five areas of services that Evo provides, defined as (1) industrial resources, (2) environmental resources, (3) waste management resources, (4) transportation resources, and (5) land resources. Poling worked only in the area of industrial resources.

{10}     Paragraph A.2 of the Covenant provides that Poling will not, for a period of twelve months from the termination of his employment, within the "Restricted Territory," engage in any employment activity which is the same as or substantially similar to those employment activities in which Poling engaged while employed with Evo:

(a)  for a direct competitor of Evo whose products or services compete with those provided by Evo; or

(b) for any customer of Evo during the two years prior to the termination of Poling's employment or any customer Evo was actively soliciting at the time of the termination.

{11}     As worded, the restriction on employment was limited to the period of twelve months following Poling's termination and only prevents employment in the same activities Poling performed for Evo; that is, industrial services. However, these limitations were in force throughout the entire Restricted Territory.

{12}    Paragraph A.2 of the Covenant further provides that, within the Restricted Territory and for a period of twelve months from the termination of his employment, Poling may not solicit, for the purpose providing the same or substantially similar product or service as Evo, any customer who was a customer within the two years prior to the termination of Poling's employment or who was being actively solicited by Evo as a customer at the time of that termination.

{13}    Evo advocates that the Court should read the phrase, "for the purpose of providing the same or substantially similar product or service," as limiting the application of the non-solicitation covenant, as applicable to Poling, to only industrial services.

{14}    In response to the Court's inquiry, Evo admitted that the non-solicitation Covenant is overbroad if it must be construed to extend to prohibiting Poling from soliciting business for all five services that Evo offers.

{15}    Paragraph A.2 of the Covenant also prohibits Poling from contacting any Evo employee during the twelve months following the termination of his employment for the purposes of soliciting or inducing them to leave Evo's employment.  Evo has produced testimony from a number of Evo employees that Poling solicited or induced them to leave their employment with Evo.  While Poling contests this evidence, at least in part, he further indicated that he does not oppose the entry of a preliminary injunction enjoining any further solicitation or inducement of Evo employees.

{16}    The "Restricted Territory," is defined by paragraph A.3 of the Covenant, which reads:

> Within a 50-mile radius of any city, town, or geographic location in which Evo has sold its products or services within the two-year period prior to the termination of the Employee's employment with Evo, within the following states:
>
> (a)    North Carolina;
> (b)    South Carolina
> (c)    Virginia;
> (d)    any state in the United States in which Evo sells its products or services.

The parties agree that this geographic area is reasonable, in that this Covenant applies only to direct competitors in the same market areas and with respect to the same or substantially similar competing product or service, and there is a limited number of direct competitors who sell the same or similar products and services as those marketed and sold by Evo.

(Verified Compl. & Mot. TRO & Prelim. Inj. Ex. B ¶ A.3.)

{17} Evo contends that the Restricted Territory for purposes of Poling's Covenant should be limited to the radius around customers for whom Evo provided industrial services, and that this limitation is evident from the phrase that the Covenant "applies only to direct competitors in the same market areas and with respect to the same or substantially similar competing product or service." (Verified Compl. & Mot. TRO & Prelim. Inj. Ex. B ¶ A.3.) That is, Evo urges that the language necessarily implies that the parties intended and agreed that the Covenant would only apply to customers for a "substantially similar competing product or service" for which Poling was employed by Evo.

{18} Paragraph A.5 of the Covenant acknowledges that a violation of the Covenant would result in irreparable harm, such that Evo shall be entitled to an injunction. Paragraph B of the Covenant states that its various provisions are severable.

{19} Poling accepted employment with EnviroVac on April 13, 2015, to operate a satellite facility in Greensboro, North Carolina. Evo provides industrial services within fifty miles of Greensboro. Poling was employed for purposes of providing industrial services of the same type as those he had provided when employed by Evo. EnviroVac is a direct competitor of Evo's in the area of industrial services.

{20} At the time Poling was terminated, he maintained a close, personal relationship with Tyson. After he was terminated, and prior to accepting employment with EnviroVac, Poling requested that Tyson secretly obtain Evo's information, which Evo contends is confidential and subject to undertakings executed by both Poling and Tyson. Tyson obtained Poling's business-card holder in

response to his request. Poling has testified that the cards in that holder were exclusively those that he possessed prior to beginning employment with Evo.

{21}  Although Tyson agreed to and intended to obtain additional information as Poling requested, she was unable to do so before she resigned from Evo on March 30, 2015.

{22}  Poling had one rate sheet, which Evo contends is confidential. Poling admits that he provided the rate sheet to EnviroVac, but offered testimony denying both that the information should be considered confidential and that he or EnviroVac used the rate sheet. The Court has, for purposes of this Motion only, assumed both that the information was confidential and that Poling actually used the information on behalf of EnviroVac.

{23}  After her resignation, Tyson discovered that she possessed certain other Evo information. She testified that she has returned all such information to Evo, and the record does not indicate that she provided this information to Poling. At the hearing on the Motion, her counsel, in her presence, assured the Court that she has returned all such information, she understands the nature and import of her obligations to honor the protection of Evo's confidential information, and she recognizes the potential consequences of her failure to do so.

{24}  Capital Power, which maintains facilities in Roxboro and Southport, North Carolina, is or was an Evo customer that, prior to Poling's termination, accounted for more than fifty percent of Evo's billings for industrial services. Poling had direct contact with Capital Power while he was employed by Evo. Both before and after his employment with EnviroVac, Poling directly solicited Capital Power for the purpose of providing industrial services to Capital Power on behalf of EnviroVac, and in direct competition with Evo.

{25}  Capital Power is now an EnviroVac customer for industrial services. There is contested evidence as to why Capital Power no longer intends to obtain industrial services from Evo, and whether Poling's move from Evo to EnviroVac impacted Capital Power's decision to switch industrial services providers.

{26}     Poling has solicited other Evo customers in North Carolina for purposes of providing of industrial services in direct competition with Evo.

{27}     Shortly after his employment with Evo was terminated, Poling texted Tyson statements evidencing his intention to harm Evo and to take its customers. These messages demonstrate a clear potential that Poling will harm Evo if he is not enjoined.

{28}     Evo came into possession of these documents when Poling returned his company-owned iPhone to Evo without also disabling a link between that iPhone and his cloud account.  Because the cloud account was also linked to Poling's personal phone, the iPhone continued to receive and display text messages sent to and from his personal phone.

{29}     Absent the entry of an injunction, it is likely that Poling intends to and will continue employment and solicit customers in contravention of the Covenant.

{30}     The geographic scope of the Restricted Territory of the Covenant is defined by a geographic radius of fifty miles that extends not from Evo's various offices, but from any location where Evo provides services.

{31}     Evo has not demonstrated that it has more than one customer in the various geographic areas within the Restricted Territory, which includes a radius of fifty miles around any customer for which Evo provided a service within two years of the termination of Poling's employment.

{32}     Based upon these Findings of Fact, solely for purposes of the Motion, the Court makes the following:

## II.   CONCLUSIONS OF LAW

{33}     Restrictive covenants are not generally favored and must be strictly construed against the employer. *See Farr Assocs., Inc. v. Baskin,* 138 N.C. App. 276, 279, 530 S.E.2d 878, 881 (2000) (noting that covenants not to compete are disfavored); *see also Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 153, 555 S.E. 2d 281, 291 (2001) (noting that ambiguities in written instruments should be construed against the drafter).

{34}    To be valid, a restrictive covenant prohibiting employment or customer solicitation must be  (1) in writing, (2) made a part of the employment contract, (3) supported by consideration, (4) reasonable both as to time and territory, and (5) not against public policy in that they are no broader than necessary to protect the employer's interest.  *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649–50, 370 S.E. 2d 375, 380 (1988).  To determine the reasonableness of the time and geographic scope of a covenant, a court examines time and territory in combination.  *See Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 665, 158 S.E.2d 840, 844 (1968) ("Although a valid covenant not to compete must be reasonable as to both time and area, these two requirements are not independent and unrelated aspects of the restraint.  Each must be considered in determining the reasonableness of the other.").  As a general proposition, a wider geographic scope might be permissible as the time requirement is shortened.  *See id.*

{35}    The Covenant was in writing, was signed by Poling as a part of his employment contract, and was supported by consideration.  *See Robins v. Weill, Inc. v. Mason*, 70 N.C. App. 537, 542, 320 S.E.2d 693, 697 (1984) (noting that a covenant not to compete entered into at the start of employment is supported by consideration).  The Covenant is then enforceable so long as it is reasonable as to time and territory.

{36}    Here, the Covenant restricts Poling from competitive employment for twelve months.  This is well within the time period that North Carolina courts have upheld.  *See, e.g.*, *Hejl v. Hood, Hargett & Assocs. Inc.*, 196 N.C. App. 299, 674 S.E.2d 425 (2009) (upholding three-year time restraint); *Kinesis Adver. Inc. v. Hill*, 187 N.C. App. 1, 652 S.E.2d 284 (2007) (upholding two-year time restraint). The time period of the Covenant as related to the prohibition on competitive employment is reasonable.  The Covenant is drawn narrowly to limit only employment of the type Poling performed while Evo employed him.  If the Restricted Territory is reasonable as to geographic scope, the restrictive covenant as to employment is reasonable.

{37} As worded, the Covenant's prohibition against customer solicitation is for a period of three years. This period is determined by adding the one year prohibition following the termination of Poling's employment to the look-back period of two years that paragraph A.2 of the Covenant uses to determine the customers subject to the restriction. *See Farr Assocs.*, 138 N.C. App. at 280–81, 530 S.E.2d at 881.

{38} If the Covenant were restricted to Evo customers with whom Poling dealt directly, the three-year time period would be within the range of those time periods approved by North Carolina cases. *Cf. Manpower of Guilford Cty., Inc. v. Hedgecock*, 42 N.C. App. 515, 522, 257 S.E.2d 109, 114–15 (1979) (noting that time limitations in non-competes should be valid if their purpose is to prevent loss of customers, and that when the primary concern is the employee's knowledge of customers, the territory should be restricted to those areas in which the employee made contacts). However, the Covenant is not so restricted. First, the Covenant is not limited to customers with which Poling dealt directly. Second, the Covenant extends beyond customers Evo had at the time of Poling's termination, reaching customers who were Evo customers within the two years prior to Poling's termination but were not Evo customers at the time of Poling's termination and reaching all potential Evo customers. Further expanding the geographic scope, the Restricted Territory extends to a fifty-mile radius around each such customer.

{39} The Court must strictly construe the contract against its drafter, Evo. *Id.* at 522, 257 S.E.2d at 115.

{40} There is, at a minimum, a substantial question of whether the Covenant as worded is no broader than necessary to protect Evo's legitimate business interests. The Court concludes that Evo has not shown a probability of success in proving that the Restricted Territory of the Covenant is reasonable both as to time and territory. The Court further concludes that it cannot cure the problem of the Covenant's overbreadth by utilizing the blue-pencil doctrine. There is no phrase that the Court can strike from the definition of the Restricted Territory to limit its reach either to only customers consuming Evo industrial services or to

customers at the time of termination of Poling's employment. *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App 307, 317, 450 S.E.2d 912, 920 (1994) (blue penciling limited to "distinctly separable" provisions of a restrictive covenant). The most narrow construction the Court could draw using its blue-pencil authority is to limit the Covenant to a fifty-mile radius around customers to which Evo had, within the two years prior to Poling's termination, sold products or services in North Carolina. In some instances, the radius would be greater than fifty miles, because the radius extends to any "city, town, or geographic location" in which the customer is located. The term "geographic location" is not defined. For example, Evo indicated at the hearing that it has a customer in Atlanta, Georgia. If the "geographic location" were meant to be the greater Atlanta metropolitan area, the total radius would be substantially greater than fifty miles.

{41} Even if the Covenant's prohibitions on solicitation could be restricted to customers seeking industrial services by employing the inference that Evo promotes, notwithstanding the rule of construction that requires construing the language strictly, substantial questions remain as to whether the restriction is broader than necessary when the geographic scope is considered in conjunction with the time period of three years.

{42} The Covenant utilizes a two-year look-back period to determine the customers that must be used to define the geographic scope of the Covenant. That look-back period extends the scope to a geographic radius around former Evo customers who may no longer have been customers by the time Poling's employment was terminated. *Manpower*, 42 N.C. App. at 522, 257 S.E.2d at 114–15 (noting that a restriction as to territory is only reasonable to the extent that restriction protects the legitimate interests of an employer in maintaining its customers). There is no separate and distinct phrase in the definition of the Restricted Territory that the Court could strike so as to limit the Covenant to only current customers.

{43} Evo has not developed an evidentiary record that demonstrates a legitimate business interest in extending the Restricted Territory to the fifty-mile

radius of the cities or towns within which its customers are located. A more typical covenant includes a geographic radius around an employer's business location. The evidence indicates that some of Evo's customers are located substantially more than fifty miles from any Evo facility, including, for example, in Atlanta or West Virginia. Evo argues that, in practical effect, its place of business should be considered its customer locations because Evo provides its services at the customers' facility. The corollary would necessarily be that Evo has as many facilities as it has customers and that Poling must be restricted by his Covenant within the geographic radius of each of them.

{44} North Carolina precedent has allowed an employer to extend a non-compete to the full reach of that employer's area of business, representing a geographic area as large as North America and South America. Importantly, however, the non-compete was limited to where the employee had extensive managerial responsibility and the restriction was specific to the employer's clients without further geographic limitations. *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 91–92, 638 S.E.2d 617, 621–22 (2007).[1] Here, the Covenant reaches beyond customers with whom Poling dealt directly, even though he may have had some oversight responsibility for all customers as a result of his management position. *See Hejl*, 196 N.C. App. at 306–07, 674 S.E.2d at 430 (refusing to enforce a non-solicitation clause whose geographic scope extended into areas where the employee did not have personal knowledge or involvement).

{45} The questions as to the Restricted Territory's overbreadth are compounded because the prohibition against customer solicitation is not limited to customers for which Poling had direct personal involvement, and extends to potential as well as actual customers. *See id.* at 307, 674 S.E.2d at 430 ("[W]here

[1] Further, *Okuma* was decided under the inferences required for a Rule 12(b)(6) motion, and the court in that case was unwilling to decide as a matter of law, without facts "relating to how closely the geographic limits fit within [the employee's] work for [the employer]," that such a large territorial restriction was overbroad given the allegations of the employee's significant corporate management responsibilities. *Okuma*, 181 N.C. App. at 92, 638 S.E.2d at 622.

the Agreement reaches not only clients, but potential clients, and extends to areas where Plaintiff had no connections or personal knowledge of customers, the Agreement is unreasonable.").

{46} The Court is aware of no North Carolina precedent that has upheld a covenant that is both customer based and extends to a geographic radius around customer facilities, whether based on only actual customers or both actual and potential customers.

{47} If the Covenant against solicitation would be rendered otherwise reasonable, the Court could use its blue-pencil authority to strike the phrase "or any person or entity whose business Evo was actively soliciting at the time of the termination of the Employee's employment with Evo."

{48} Evo has demonstrated that it may suffer irreparable harm if Poling is not enjoined.

{49} Evo did not unreasonably delay in bringing the litigation or seeking injunctive relief.

{50} Evo should not be barred from injunctive relief because of its possession or use of texts Poling sent after termination of his employment. In fact, those texts demonstrate a clear basis for enforcing the Covenant against Poling if the Court could construe the Restricted Territory as no more broadly defined than necessary to protect Evo's legitimate business interests.

{51} However, based on the entire record, for purposes of the present Motion, the Court concludes that Evo has not demonstrated a probability that it will prove that the Restricted Territory that governs the application of the Covenant is no broader than necessary to protect its legitimate business interest. Specifically, Evo has not demonstrated the probability that it can prove a legitimate business interest in restricting Poling's employment or solicitation, even as to industrial services only, in the geographic radius around any city, town, or geographic location where Evo has sold services within the two years prior to the termination of Poling's employment. The Court is unable, based on the language as drafted, to use its blue-

penciling authority to limit the Covenant to customers with which Poling dealt with directly or to exclude the geographic radius around such customers.

{52}   Accordingly, Evo is not entitled to a preliminary injunction enjoining Poling from violating paragraphs A.2(a), A.2(b) or A.2(c) of the Covenant.

{53}   Poling agreed at oral argument that he does not contest an injunction that enjoins him from (1) soliciting or inducing Evo employees for purposes of terminating their employment with Evo, and (2) sharing or otherwise using confidential information as defined by his Evo Employment Agreement.

{54}   Evo has not shown that it will suffer irreparable harm if a preliminary injunction is not entered against Tyson to enjoin any further distribution of information governed by the Acknowledgement she signed as a part of her Evo employment.  This is particularly so because Poling has indicated that he does not oppose the entry of a preliminary injunction enjoining him from violating his own obligation to protect Evo's confidential information.

{55}   The TRO as against Tyson has expired.  It shall be allowed to expire as against Poling upon entry of this Order, except that the Court orders limited preliminary injunctive relief against Poling.

{56}   From the date of this Order until the conclusion of this litigation, Poling shall:

(a) Cease any further dissemination, copying, reproduction, or other use of confidential information taken from, or which originates from Evo, it being understood that upon any application to enforce this injunction, Evo shall have the burden of proving that any information made subject to any such enforcement effort is actually confidential; and

(b) Cease the solicitation of or attempting to induce any Evo employees to terminate their employment with Evo.

{57}   Plaintiff's bond in the amount of $500.00 shall remain in force and is adequate for purposes of this limited injunction.

{58}    Except as otherwise provided, Plaintiff's Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED this 20th day of August, 2015.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
   for Complex Business Cases