BRYANT, Judge.
Where a covenant not to compete is valid and enforceable and there remain issues of material fact to be resolved, we reverse the order of the trial court granting summary judgment in favor of defendant.
Plaintiff Security National Investments, Inc., operates the Renaissance European Day Spa, a full service salon, in Fayetteville, North Carolina. Plaintiff offers typical salon services including hair styling, nail services, skin care, a juice bar, and a gym fitness facility. In September 2004, defendant Dorian S. Rice entered into an employment contract with plaintiff, initially to be employed as a nail technician. Under paragraph 14 of the contract, the initial term of employment was to be for one year, at which point the contract would automatically renew for an additional year. Thereafter, the contract would automatically renew on a month-to-month basis until terminated by either party.
On or about 14 September 2004, defendant entered into an Employment Agreement with plaintiff, which included certain restrictive covenants related to competition.[1] The relevant portion of the Employment Agreement contained the following non-compete restriction:
12. Covenant Not to Compete: It is the intention of the parties that the Employee shall be reasonably restricted for the time limitation and within the area herein set forth from competing in any manner with the Company through the use of skills, information and knowledge gained as a result of the training and employment of the Employee by the Company.
The Employee agrees that for a period of two (2) years after the Employee ceases to work for the Company, whether voluntarily or involuntarily, and within seven (7) miles of the place of business of the Company, the Employee will not, directly or indirectly, either for himself or in behalf of any other person, firm, or corporation, engage in any activity in competition with all or any portion of the type of business of the Company. This is to include doctor offices, chiropractic offices, fitness centers or any place of business offering services similar to those of the Renaissance European Day Spa .
(Emphasis added). The Employment Agreement also included certain restrictive covenants related to solicitation, which were labeled "Trade Secrets" and included the following language, in pertinent part:
During and after his employment, the Employee will not call upon or contact any clients of the Company for the purpose of soliciting or selling to these clients any services or products in competition with the Company in any manner, without the written consent of the Company, which consent may be arbitrarily withheld.
During the course of her employment with plaintiff, defendant became a hairstylist after completing an apprenticeship through Mitchelle's/Montgomer's Hair School. Later, on 19 April 2013, defendant filed the Articles of Incorporation for Roots Hair Salon, Inc. Thereafter, in a letter dated 22 April 2013, defendant resigned her position as hairstylist, effective two weeks from the date of the letter, on 8 May 2013. On 26 April 2013, defendant filed the Articles of Organization for DSR Properties, LLC. Three days later, a North Carolina Warranty Deed was recorded with the Cumberland County Register of Deeds on 29 April 2013, indicating DSR Properties, LLC was the grantee of certain property situated at 654 Hay Street, Fayetteville, North Carolina. On or about 2 May 2013, defendant had an exit interview with plaintiff's representative Bob McPheters and, during this interview, plaintiff reviewed the terms of the employment contract defendant signed, including the non-compete provision, and signed an Exit Interview/Information Sheet. From May 2013 until 8 September 2013, defendant worked as an independent contractor hair stylist at Cassie's Beauty Salon, which was located outside the restricted geographic area described in the non-compete.
On 18 September 2013, defendant opened Roots Hair Salon, Inc. ("Roots") for business at 654 Hay Street. While defendant owns Roots, she also rents a booth there and works as an independent contractor hairstylist. Roots is located within a seven-mile radius of plaintiff's business and provides hair styling and waxing services.
On 8 December 2014, plaintiff commenced this action in a verified complaint against defendant for breach of contract, injunctive relief, and misappropriation and misuse of trade secrets, with all three claims arising from defendant's employment contract with plaintiff. Plaintiff's verified complaint also contained a motion for a temporary restraining order and a motion for preliminary injunction. On 12 January 2014, plaintiff filed an amended complaint, and defendant filed a motion to dismiss, answer, and counterclaim. Plaintiff filed a motion to dismiss and reply to the counterclaim.
Plaintiff's motion for preliminary injunction, deriving from the non-compete provision in the employment contract, was heard by the Honorable C. Winston Gilchrist on 15 April 2015 in Cumberland County Superior Court, and was denied by order filed 6 May 2015. The trial court found that plaintiff had made no showing of irreparable harm, loss, injury, or damage if the preliminary injunction did not issue. On 5 November 2014, defendant filed a motion for summary judgment, which was heard by the Honorable Mary Ann Tally on 18 November 2014, and Judge Tally subsequently filed an order granting summary judgment to defendant on plaintiff's first and second claims for relief, but denying defendant's motion as to plaintiff's third claim, misappropriation and misuse of trade secrets. Plaintiff filed a motion to amend the judgment, and Judge Tally signed an amended order which was filed on 16 December 2015. Plaintiff filed notice of appeal.
_________________________
On appeal, plaintiff contends the trial court erred in entering summary judgment for defendant on plaintiff's claim for breach of contract. Specifically, plaintiff contends the covenant not to compete is valid as a matter of law and that there are still remaining issues of material fact regarding whether defendant breached her contract by opening Roots Hair Salon in order to directly compete with plaintiff's business. We agree.
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ).
"Formation of a valid contract requires an offer, acceptance and consideration." Kinesis Adver., Inc. v. Hill , 187 N.C. App. 1, 11, 652 S.E.2d 284, 292 (2007) (citation omitted). To be enforceable, a covenant not to compete also requires five further conditions: it must be "(1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." United Labs. Inc. v. Kuykendall , 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988) (citation omitted). The fifth requirement, stated another way, is that the non-compete provision must be "designed to protect a legitimate business interest of the employer." Hartman v. W.H. Odell & Assocs., Inc. , 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994) (quoting Young v. Mastrom, Inc. , 99 N.C. App. 120, 122-23, 392 S.E.2d 446, 448 (1990) ); see infra Section B. "The party who seeks the enforcement of the covenant not to compete has the burden of proving that the covenant is reasonable." Hartman , 117 N.C. App. at 311, 450 S.E.2d at 916 (citations omitted).
A. Reasonableness as to Time and Territory
To carry its burden [the party seeking enforcement] must prove that the covenant not to compete is reasonable as to both time and territory. In evaluating reasonableness, the time and territory restrictions must be read in tandem:
Although a valid covenant not to compete must be reasonable as to both time and area, these two requirements are not independent and unrelated aspects of the restraint. Each must be considered in determining the reasonableness of the other.
Id. at 311-12, 450 S.E.2d at 916 (citation omitted) (quoting Jewel Box Stores Corp. v. Morrow , 272 N.C. 659, 665, 158 S.E.2d 840, 844 (1968) ). In other words, "[a] longer period of time is acceptable where the geographic restriction is relatively small, and vice versa ." Okuma Am. Corp. v. Bowers , 181 N.C. App. 85, 89, 638 S.E.2d 617, 620 (2007) (alteration in original) (quoting Farr Assocs. v. Baskin , 138 N.C. App. 276, 280, 530 S.E.2d 878, 881 (2000) ). Similarly, "[a]lthough either the time or the territory restriction, standing alone, may be reasonable, the combined effect of the two may be unreasonable." Farr Assocs. , 138 N.C. App. at 280, 530 S.E.2d at 881.
With regard to the time requirement, "[a] five year time restriction is the outer boundary which our courts have considered reasonable...." Id. (citations omitted); see also Harwell Enters., Inc v. Heim , 276 N.C. 475, 481, 173 S.E.2d 316, 320-21 (1970) (upholding a two-year restriction); Precision Walls, Inc. v. Servie , 152 N.C. App. 630, 638, 568 S.E.2d 267, 273 (2002) (finding a one-year time restriction reasonable).
"[T]he scope of the geographic restriction must not be any wider than is necessary to protect the employer's reasonable business interests." Okuma Am. Corp., 181 N.C. App. at 89, 638 S.E.2d at 620 (citing Precision Walls , 152 N.C. App. at 638, 568 S.E.2d at 273 ). As to the geographic restriction, courts look to six factors in determining whether a restriction is valid:
(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.
Hartman , 117 N.C. App. at 312, 450 S.E.2d at 917. "To prove that a geographic restriction in a non-compete provision is reasonable, an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." Farr Assocs. , 138 N.C. App. at 281, 530 S.E.2d at 882 (citation omitted).
In Okuma Am. Corp. , this Court held that even where "the geographic effect of the restriction [was] quite broad[,] ... when taken in conjunction with the six-month duration, it [was] not per se unreasonable in light of our courts' past rulings." 181 N.C. App. at 90, 638 S.E.2d at 620-21 (citations omitted). Here, the covenant's time and territory restrictions are two years and seven miles, respectively. Plaintiff's business, Renaissance European Day Spa, is largely conducted within Cumberland County. Defendant opened Roots, her hair salon, three miles away from plaintiff's business in Fayetteville, Cumberland County. Before working at Roots, however, and following her resignation from plaintiff's business, defendant worked at Cassie's Beauty Salon in Eastover, located approximately ten miles away from plaintiff's location.
As the non-compete agreement would not have prevented defendant from working at Cassie's, a two-year/seven-mile radius restriction would seem to be a reasonable one. Indeed, the following testimony elicited by plaintiff's counsel from defendant during her deposition is illustrative in terms of proving that plaintiff's geographic restriction is reasonable as it relates to the location of its customers. See Farr Assocs. , 138 N.C. App. at 281, 530 S.E.2d at 882 :
Q.... Do-some of your current clients at Roots, were they also your clients while employed by Renaissance?
A. I don't know who was employed-I mean, I do not-I do not have access to their client information. Therefore I cannot say that they were clients of Renaissance.
Q. Okay. That's fair. But what I'm asking is, those clients which-while you were at Renaissance, that you specifically saw, have any of those clients-are they now your clients at Roots?
A. Clients who I performed services on at Renaissance, do they come-
Q. Uh-huh (yes).
A. -to Roots Hair Salon?
Q. Yes, ma'am.
A. Yes.
...
Q. Do you now know-now that you're your own boss and you can, I guess, talk with your clients about what you want to talk about, do you know where your clients live?
A. No.
Q. Generally speaking.
A. No. I do not.
Q. Do you know where any of your clients live?
A. Yes.
Q. Okay. Of the clients that you know where they live, do they live in Cumberland County?
A. Yes.
...
Q. The majority of your current clients you did not perform services for while employed by Renaissance?
A. I don't have a client list. And I didn't get personal-nor did I put out any information as far as this situation to them. So I don't-there might have been one or two that I don't recall of from ... Renaissance that may come to Roots, but I don't have information on that. I don't have a detailed client list of the people that I performed services on at [Renaissance].
...
Q.... And so what I'm asking is what percentage are new clients? What percentage of the people who come to you now did not come to you when you were employed by Renaissance?
A. Probably sixty/forty. I mean, that's just-I don't-I-I have information on-I mean, I don't have my client list.
Q. Okay. So sixty-
A. Percent new.
Q. Sixty percent are new.
A. Let's just say-
Q. Forty percent old. Is that-
Is that your best estimate right now?
A. I'm not going to guarantee that, but that's-let's just say if you're persisting on me giving you a percentage of how many people that I would think [sic]. (Nods head.)
Even defendant concedes that "the covenant not to compete fails not because it is unreasonable as to time and territory , but because the covenant not to compete is overly broad and fails to protect a legitimate business interest." (Emphasis added). Accordingly, though we find that plaintiff's covenant was reasonable as to time and territory, we must still look to whether the covenant not to compete served to protect a legitimate business interest of plaintiff. See Hartman , 117 N.C. App. at 311, 450 S.E.2d at 916.
B. Legitimate Business Interest
A covenant not to compete will not be enforced if it "is too broad to be a reasonable protection to the employer's business...." Whittaker Gen. Med. Corp. v. Daniel , 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989). "To be valid, the restrictions on the employee's future employability by others 'must be no wider in scope than is necessary to protect the business of the employer.' " VisionAIR, Inc. v. James , 167 N.C. App. 504, 508, 606 S.E.2d 359, 362 (2004) (quoting Manpower of Guilford Cnty., Inc. v. Hedgecock , 42 N.C. App. 515, 521, 257 S.E.2d 109, 114 (1979) ).
In North Carolina, the protection of customer relations against misappropriation by a departing employee is well recognized as a legitimate interest of an employer. Additionally, a covenant is reasonably necessary for the protection of a legitimate business interest if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers.
Okuma Am. Corp. , 181 N.C. App. at 90, 638 S.E.2d at 621 (internal citations omitted); see also Farr Assocs. , 138 N.C. App. at 280, 530 S.E.2d at 881 (holding employer's "desire to keep its client base intact when its employees depart is a legitimate business interest," but finding non-compete unenforceable based on unreasonable restriction as to time and territory).
Generally, "[i]f a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced. The courts will not rewrite a contract if it is too broad but will simply not enforce it." Whittaker Gen. Med. Corp. , 324 N.C. at 528, 379 S.E.2d at 828 (citations omitted). "If the contract is separable, however, and one part is reasonable, the courts will enforce the reasonable provision." Id. (citation omitted).
When the language of a covenant not to compete is overly broad, North Carolina's "blue pencil" rule severely limits what the court may do to alter the covenant. A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.
Hartman , 117 N.C. App. at 317, 450 S.E.2d at 920.
To be "distinctly separable" and in order to excise ("blue pencil") a provision from a covenant, other restrictions in the covenant must not be dependent on the provision to be excised by the court. See Jon P. McClanahan & Kimberly M. Burke, Sharpening the Blunt Blue Pencil: Renewing the Reasons for Covenants Not to Compete in North Carolina , 90 N.C. L. Rev. 1931, 1955-56 (Sept. 2012) (citing Wachovia Ins. Servs., Inc. v. McGuirt , No. 06 CVS 13593, 2006 WL 3720430, at *5, *11 (N.C. Super. Ct. Dec. 19, 2006) ) ("Because a time restriction was required for enforcing the non-solicitation provision, the non-solicitation provision was deemed dependent upon the overbroad non-compete provision and could not be saved by blue-penciling the covenant."). But, "[w]here the territory embraced in restrictive covenants is unreasonable, but is expressed in divisible terms, i.e., in terms of local geographical or governmental units, the majority of the courts enforce the covenant in as many of the units as are reasonable and disregard the remainder." Welcome Wagon Int'l, Inc. v. Pender , 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961) (citations omitted) (striking unreasonable provisions in a string of territorial provisions connected by the word "or").
Plaintiff, which operates a full service salon, is not in the business of operating a doctor's office or a chiropractor's office. Thus, the provision which prohibits defendant from working in a doctor's or chiropractor's office within seven miles of plaintiff and within two years is overly broad and does not function to protect a legitimate business interest of plaintiff. The remainder of the sentence-"fitness centers or any place of business offering services similar"-is overly broad as well in that it effectively prohibits defendant from practicing her trade under any circumstances whatsoever, albeit pursuant to the time and territory restriction (two years, seven miles). Accordingly, we enforce only the text below which has not been stricken, and excise that which is, as the inclusion of "doctor offices, chiropractic offices, fitness centers or any other place of business offering services similar" to plaintiff's business, an overly broad provision:
The Employee agrees that for a period of two (2) years after the Employee ceases to work for the Company, whether voluntarily or involuntarily, and within seven (7) miles of the place of business of the Company, the Employee will not, directly or indirectly, either for himself or in behalf of any other person, firm, or corporation, engage in any activity in competition with all or any portion of the type of business of the Company. This is to include doctor offices, chiropractic offices, fitness centers or any place of business offering services similar to those of the Renaissance European Day Spa.
As the sentence to be excised was "expressed in divisible terms"-in other words, it is distinctly separable-we "enforce the covenant in as many of the units as are reasonable and disregard the remainder." See id. (citations omitted).
With regard to the reasonableness of the remainder of the covenant-not-to-compete, this Court has recognized that a non-compete agreement protects a legitimate business interest where the employer's work required that its employees "develop an intimate relationship with its clients." Farr Assocs. , 138 N.C. App. at 280, 530 S.E.2d at 881. Regarding this "relationship," this Court stated as follows:
Because the clients grow to trust individual Farr employees, the clients may naturally want to continue that relationship even if the [employee] leaves Farr. However, should the [employee] maintain the relationship, Farr risks losing a customer. The danger of a departing employee "misappropriating" a client is indeed very real, since Farr's [employees] develop not only close relationships with Farr's clients, but gain knowledge of Farr's business practices too. Following Kuykendall , we hold that Farr's desire to keep its client base intact when its employees depart is a legitimate business interest.
Id. at 280, 530 S.E.2d at 881.
Despite determining that the covenant protected a legitimate business interest, this Court nevertheless held the covenant unenforceable due to the unreasonableness of the requirement as to time and territory. Id. The time requirement had the practical effect of lasting for five years and prevented the employee "from working for all of [the employer's] current or recent clients, regardless of where the client [was] located, whether he had any contact with them, or whether he even knew about them." Id. at 282, 520 S.E.2d at 882. Furthermore, the employer had approximately 461 offices in forty-one states and four foreign countries. Id.
Here, plaintiff is in the business of providing salon services through Renaissance European Day Spa, located in Cumberland County, plaintiff's sole location. Plaintiff offers hairstyling services, nail services, waxing services, and massages and operates a juice bar and fitness center on its premises. Defendant, who became a hairstylist during the course of her employment with plaintiff, opened up her salon, Roots, which offers hair styling and waxing services, less than seven miles away from plaintiff. While defendant owns Roots, she also rents a booth there and works as an independent contractor hairstylist.
Hairstyling and waxing services are both relationship-intensive services in which the stylist has a relatively intimate and personal relationship with the client. Hairstylists often learn what is required in order to achieve a client's desired results each time, and it may be the case that defendant developed "intimate relationship[s]" with her clients who may have wanted to continue that relationship after defendant concluded her employment with plaintiff and opened her own salon. Just as this Court deemed there was in Farr Assocs. , here, there is a legitimate concern that a hairstylist, when leaving plaintiff's employ, will take clients with her. Indeed, defendant stated in her deposition testimony that forty percent of her current clients at Roots were former clients of hers while she was employed with plaintiff. Accordingly, plaintiff's desire to keep its client base intact, subject to a two-year/seven-mile restriction is designed to protect a legitimate business interest. Therefore, we agree with plaintiff that the covenant not to compete is valid and enforceable.[2]
A material issue of fact remains as to whether defendant is bound by the written employment contract as plaintiff contends defendant signed the contract, and defendant contends she never signed the contract while employed by plaintiff. The record contains copies of the employment agreement which appear to have been signed by plaintiff. However, defendant claims in her affidavit that she did not sign any employment contract with plaintiff, and that the signatures that appear on the copies of the contract are "not [her] signature as [she] did not sign said contract." In the event the fact-finder determines defendant did enter into a contract with plaintiff, the fact-finder should also determine whether defendant violated the non-compete. Accordingly, the order of the trial court is
REVERSED AND REMANDED.
Report per Rule 30(e).
Judges STEPHENS and DILLON concur.

Defendant was presented with the Employment Agreement which contained non-competition and non-solicitation provisions, but in her affidavit defendant contends she did not agree to said provisions. However, as this issue was not presented to the trial court or argued at the summary judgment hearing, defendant's motion for summary judgment was presented as if she had executed the Employment Agreement. Therefore, we address the Employment Agreement as if defendant had executed it.

We note also what appears to be a significant inconsistency in the trial court's order-that defendant's motion for summary judgment was granted as to plaintiff's breach of contract claim, but defendant's motion for summary judgment was denied as to plaintiff's misappropriation and misuse of trade secrets claim. If we assume (which we must because the trial court made no findings of fact and no transcript of the hearing was filed with the record) that the trial court granted defendant's motion for summary judgment on the breach of contract claim on the basis that the contract was an unenforceable covenant not to compete, we are left with nothing to indicate the reasoning behind the trial court's order denying defendant's motion for summary judgment with regard to misappropriation of trade secrets. Indeed, the employment contract at issue contained provisions entitled both "Trade Secrets" and "Covenant Not To Compete." It is possible the trial court denied summary judgment on the misappropriation of trade secrets claim based on an implied contract between plaintiff and defendant, but there is nothing in the record to support this theory and we will not make that assumption on appeal.