ZACHARY, Judge.
 

 *594
 
 Plaintiff Sterling Title Company appeals from the trial court's order granting Defendants Laura Louise Martin and Magnolia Title Company, LLC's motion to dismiss Plaintiff's claims for breach of the parties' non-compete agreement, breach of the implied duty of good faith and fair dealing, violation of the North Carolina Trade Secrets Protection Act, unfair and deceptive trade practices, and conversion. We affirm.
 

 Background
 

 Plaintiff is a title insurance company located in Raleigh, North Carolina. Defendant Martin began working for Plaintiff as an underwriter in October 2007. Defendant Martin's duties in that role included "underwriting title, developing and maintaining business relationships with [Plaintiff's] clients, serving in a management role, and developing and selling business and maintaining accounts for [Plaintiff's] clients throughout the State of North Carolina." In 2008, Defendant Martin was licensed to practice law in North Carolina.
 

 As part of her employment contract, Defendant Martin signed a Proprietary Information, Inventions, Non-Competition and Non-Solicitation Agreement ("Non-Compete Agreement" or "Agreement"). The Agreement included the following relevant provisions at issue on appeal:
 

 3. No Conflicts or Solicitation.
 

 .... I also agree that for the period of my employment by the Company and for one (1) year after the date of
 
 *595
 
 termination of my employment with the Company I will not, either directly or through others: .... (c) solicit or attempt to solicit any customer or partner of the Company with whom I had contact during my employment with the Company to purchase a product or service competitive with a product or service of the Company; ... or (d) provide products or services competitive with a product or service of the Company to any customer or partner of the Company with whom I had contact during my employment with the Company.
 

 On 10 May 2017, while still employed by Plaintiff, Defendant Martin formed Magnolia Title Company, LLC, which, according to its website, "is an attorney-owned independent title agency providing real estate practitioners with extensive knowledge and exceptional service for 4 national title underwriters." Defendant Martin resigned from her employment with Plaintiff on 31 May 2017.
 

 According to Plaintiff, within one year of resigning from her employment, Defendant Martin, through Defendant Magnolia Title Company,
 

 35.... is and/or has solicited received, and/or has written business for at least one Sterling Title client in New Hanover County, North Carolina. As part of her job duties, Defendant Martin would travel to New Hanover County purportedly to meet with clients, to maintain accounts, and to develop and further business for Sterling Title. ...
 

 36. Plaintiff has learned, upon information and belief, that Defendants Martin and/or Magnolia Title have contacted, marketed to, and/or solicited business from Sterling Title clients in furtherance of their business development and scheme. Upon information and belief, Defendants Martin and Magnolia Title did so in direct violation of the Non-Compete Agreement and in an effort to compete directly with Sterling Title and/or to take clients from Sterling Title.
 

 37. Upon information and belief, Defendants have contacted and/or visited with
 
 *631
 
 several of Sterling Title customers with whom Defendant Martin worked while employed by Sterling Title in an effort to obtain additional accounts and business on behalf of Defendant Magnolia Title.
 

 After Defendant Martin's resignation, Plaintiff hired digital forensics examiner Derek Ellington to examine the company computer that
 
 *596
 
 Defendant Martin used while working for Plaintiff. Ellington's affidavit was filed contemporaneously with Plaintiff's complaint ("Ellington Affidavit"). According to the Ellington Affidavit, on 28 April 2017, "a folder called
 
 Magnolia
 
 was created within the Personal folder of the main Dropbox folder [that Defendant Martin had installed] on the Sterling Title Company Dell computer." The folder was found to contain "a list of 51 names and email addresses" in a spreadsheet entitled "
 
 Happy_Hour_with_Carolina_Bank_Sterling_-guest_list-03-22-13(1).xlsx
 
 ," which, according to the Ellington Affidavit, "is consistent with being a contact list for Sterling Title Company."
 

 On 7 November 2017, Plaintiff filed a complaint against Defendant Martin asserting claims for breach of the Non-Compete Agreement and breach of the implied duty of good faith and fair dealing. Plaintiff also asserted claims against both Defendants for violation of the North Carolina Trade Secrets Protection Act, unfair and deceptive trade practices, and conversion. On 10 January 2018, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the grounds that "the Restrictive Covenants at issue are unenforceable as a matter of law," and that the allegations in the complaint otherwise failed to state a claim upon which relief could be granted. By order entered 3 July 2018, the trial court dismissed Plaintiff's complaint with prejudice, concluding that the Non-Compete Agreement was "unenforceable against the Defendants under North Carolina law," and that the complaint otherwise failed to state a claim for which relief could be granted. Plaintiff timely appealed.
 

 On appeal, Plaintiff argues that the trial court erred in granting Defendants' motion to dismiss because (1) the Non-Compete Agreement is a valid and enforceable contract, and (2) the complaint otherwise states cognizable claims for relief as to each of Plaintiff's asserted causes of actions.
 

 Discussion
 

 I. Standard of Review
 

 "In reviewing a trial court's Rule 12(b)(6) dismissal, the appellate court must inquire whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory."
 
 Newberne v. Dep't of Crime Control & Pub. Safety
 
 ,
 
 359 N.C. 782
 
 , 784,
 
 618 S.E.2d 201
 
 , 203 (2005) (quotation marks omitted). Under this standard,
 

 *597
 
 [d]ismissal is proper ... when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.
 

 Id.
 
 at 784,
 
 618 S.E.2d at 204
 
 (quotation marks omitted).
 

 II. Covenant Not to Compete
 

 It is well established that "[a] covenant in an employment agreement providing that an employee will not compete with his former employer is not viewed favorably in modern law."
 
 Hartman v. Odell and Assocs., Inc.
 
 ,
 
 117 N.C. App. 307
 
 , 311,
 
 450 S.E.2d 912
 
 , 916 (1994) (quotation marks omitted),
 
 disc. review denied
 
 ,
 
 339 N.C. 612
 
 ,
 
 454 S.E.2d 251
 
 (1995). In order to be enforceable, an otherwise procedurally valid covenant not to compete must be both (1) "reasonable as to time and territory," and (2) "designed to protect a legitimate business interest of the employer."
 

 Id.
 

 "The reasonableness of a non-compete agreement is a matter of law for the court to decide."
 
 Farr Assocs. v. Baskin
 
 ,
 
 138 N.C. App. 276
 
 , 279,
 
 530 S.E.2d 878
 
 , 881 (2000). "In evaluating reasonableness as to time and territory restrictions, we must consider each element in tandem .... Although either the time or the territory restriction, standing alone, may be reasonable, the combined effect
 
 *632
 
 of the two may be unreasonable."
 
 Id.
 
 at 280,
 
 530 S.E.2d at 881
 
 (citation omitted).
 

 In the instant case, there is no question but that the Non-Compete Agreement is designed to protect Plaintiff's legitimate business interest, i.e., maintaining customer relationships.
 
 See
 

 United Labs., Inc. v. Kuykendall
 
 ,
 
 322 N.C. 643
 
 , 651,
 
 370 S.E.2d 375
 
 , 381 (1988) ("[P]rotection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer.");
 
 Farr
 
 ,
 
 138 N.C. App. at 280
 
 ,
 
 530 S.E.2d at 881
 
 ("[An employer's] desire to keep its client base intact when its employees depart is a legitimate business interest."). Nevertheless, "[i]f a contract ... in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced."
 
 Whittaker General Medical Corp. v. Daniel
 
 ,
 
 324 N.C. 523
 
 , 528,
 
 379 S.E.2d 824
 
 , 828,
 
 reh'g denied
 
 ,
 
 325 N.C. 231
 
 ,
 
 381 S.E.2d 792
 
 ,
 
 reh'g denied
 
 ,
 
 325 N.C. 277
 
 ,
 
 384 S.E.2d 531
 
 (1989).
 

 We therefore must consider the scope of the temporal and territorial restrictions in the Non-Compete Agreement in order to determine
 
 *598
 
 whether the Agreement is enforceable as a matter of law. "If not, then the trial court properly granted" Defendants' motion to dismiss Plaintiff's breach of contract claim.
 
 Farr
 
 ,
 
 138 N.C. App. at 279
 
 ,
 
 530 S.E.2d at 880
 
 .
 

 a. Reasonableness as to Territory
 

 This Court has identified the following factors as relevant to the determination of whether the geographic scope of a non-compete agreement is reasonable:
 

 (1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.
 

 Hartman
 
 ,
 
 117 N.C. App. at 312
 
 ,
 
 450 S.E.2d at 917
 
 .
 

 Generally, "[w]here the alleged primary concern is the employee's knowledge of the customers, the territory should only be limited to areas in which the employee made contacts during the period of his employment."
 
 Id.
 
 at 313,
 
 450 S.E.2d at 917
 
 (quotation marks omitted). Indeed, our courts have also recognized "the validity of geographic restrictions that are limited not by area, but by a client-based restriction."
 
 Farr
 
 ,
 
 138 N.C. App. at 281
 
 ,
 
 530 S.E.2d at 882
 
 (citation omitted).
 

 The Non-Compete Agreement in the present case does not prevent Defendant Martin from operating within any particular locale. Instead, it prevents Defendant Martin from soliciting or providing a competitive product or service to any "customer or partner of [Plaintiff] with whom [she] had contact during [her] employment with [Plaintiff]." This client-based restriction is, on its face, very broad. It prohibits Defendant Martin from soliciting or providing competitive services to all of Plaintiff's current or former clients with whom Defendant Martin had any form of "contact" during her employment, regardless of the client's location, the extent of the client's "contact" with Defendant Martin during her employment,
 
 [1]
 
 or the amount of time that has passed since the client
 
 *599
 
 ceased doing business with Plaintiff. The expansiveness of this restriction suggests that the Non-Compete Agreement is unreasonable.
 
 See
 

 id.
 
 at 282,
 
 530 S.E.2d at 882
 
 ("Although [the employer] had a legitimate reason for wanting to prevent departing employees from misappropriating clients, the number of clients embraced by the covenant, as compared to the number of clients serviced by [the employee], is unreasonable.").
 
 *633
 

 b. Reasonableness as to Time
 

 Although we conclude that the client-based restriction in the instant case tends to indicate that the Non-Compete Agreement is unreasonable, we next consider the temporal restriction in order to determine whether "the combined effect of the two" nevertheless renders the Non-Compete Agreement enforceable.
 
 Id.
 
 at 280,
 
 530 S.E.2d at 881
 
 ("A longer period of time is acceptable where the geographic restriction is relatively small, and
 
 vice versa
 
 .").
 

 "[T]ime restrictions of a certain length are presumed unreasonable absent a showing of special circumstances. A five-year time restriction is the outer boundary which our courts have considered reasonable ...."
 

 Id.
 

 Even so, "only 'extreme conditions' will support a five-year covenant."
 
 Hartman
 
 ,
 
 117 N.C. App. at 315
 
 ,
 
 450 S.E.2d at 918
 
 .
 

 Moreover, the time period identified in a non-compete agreement will not always be controlling as the operative time restriction in each case. "[W]hen a non-compete agreement reaches back to include clients of the employer during some period in the past, the look-back period must be added to the restrictive period to determine the real scope of the time limitation."
 
 Farr
 
 ,
 
 138 N.C. App. at 280
 
 ,
 
 530 S.E.2d at 881
 
 .
 

 In the instant case, although the applicable time restriction in the Non-Compete Agreement is stated as "the period of [Defendant Martin's] employment ... and for one (1) year after the date of termination," the Agreement also restricts Defendant Martin from soliciting or providing competitive services to any of Plaintiff's customers with whom she had contact during her employment, a period of roughly ten years. Thus, "[o]n an operative level," the Agreement is in essence an 11-year restriction.
 
 Professional Liab. Consultants v. Todd
 
 ,
 
 122 N.C. App. 212
 
 , 219,
 
 468 S.E.2d 578
 
 , 582 (Smith, J., dissenting),
 
 rev'd for the reasons stated in the dissent
 
 ,
 
 345 N.C. 176
 
 ,
 
 478 S.E.2d 201
 
 (1996). That is, the Agreement prevents Defendant Martin, for a period of one year, from doing business with Plaintiff's former or current clients with whom Defendant Martin had any contact during the past ten years, even if the customer ceased doing business with Plaintiff nine years and 11 months ago. Such a restriction is "patently unreasonable."
 

 Id.
 

 at 219
 
 ,
 
 468 S.E.2d at 583
 
 .
 

 *600
 
 Accordingly, in light of its overarching temporal and territorial restrictions, we conclude that the Non-Compete Agreement is "unreasonably broad and therefore unenforceable."
 
 Farr
 
 ,
 
 138 N.C. App. at 283
 
 ,
 
 530 S.E.2d at 883
 
 . Accordingly, the trial court properly granted Defendants' motion to dismiss Plaintiff's claims for breach of contract.
 

 c. Sufficiency of the Allegations
 

 The trial court's dismissal of Plaintiff's breach of contract claim was also proper in that Plaintiff's complaint fails to allege facts sufficient to establish a breach of the Non-Compete Agreement, even assuming it were enforceable. Plaintiff argues that "Paragraphs 35-37 of the Complaint allege facts sufficient to establish a breach of the contract, particularly at the 12(b)(6) stage." Paragraphs 36 and 37, however, set forth nothing more than Plaintiff's "belief" that Defendant Martin has "contacted and/or visited with
 
 several of [Plaintiff's] customers
 
 ," wholly failing to identify any such customer that she is alleged to have solicited in breach of the Agreement. (Emphasis added).
 
 See
 

 Feltman v. City of Wilson
 
 ,
 
 238 N.C. App. 246
 
 , 252,
 
 767 S.E.2d 615
 
 , 620 (2014) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial ...."). Moreover, while paragraph 35 of the complaint alleges that Defendant Martin "is and/or has solicited received, and/or has written business for at least one [of Plaintiff's clients] in New Hanover County, North Carolina," the complaint fails to allege that this unnamed New Hanover County client was, in fact, one "with whom [Defendant Martin] had contact during [her] employment." Accordingly, even assuming the Non-Compete Agreement to be enforceable, Plaintiff has not pleaded sufficient facts to establish a breach of the Agreement.
 

 III. Trade Secrets Protection Act Claim
 

 Plaintiff's third cause of action is against both Defendants for violation of the
 
 *634
 
 North Carolina Trade Secrets Protection Act.
 

 Chapter 66, Article 24, section 153 of the North Carolina General Statutes provides that an "owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret."
 
 N.C. Gen. Stat. § 66-153
 
 (2017). For purposes of the Act, a "trade secret" means
 

 [b]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
 

 a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable
 
 *601
 
 through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
 

 b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
 

 Id.
 

 § 66-152(3).
 

 Under North Carolina law, "[t]o plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating."
 
 VisionAIR, Inc. v. James
 
 ,
 
 167 N.C. App. 504
 
 , 510,
 
 606 S.E.2d 359
 
 , 364 (2004) (quotation marks omitted). In determining whether the information identified in a complaint constitutes a "trade secret" for purposes of the Act, relevant factors include:
 

 (1) the extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.
 

 Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.
 
 ,
 
 160 N.C. App. 520
 
 , 525,
 
 586 S.E.2d 507
 
 , 511 (2003). Information will not merit trade secret protection where the information is "either generally known in the industry ... or [is] readily ascertainable by reverse engineering."
 
 Analog Devices, Inc. v. Michalski
 
 ,
 
 157 N.C. App. 462
 
 , 470,
 
 579 S.E.2d 449
 
 , 454 (2003).
 

 In the instant case, Plaintiff alleges that Defendants misappropriated its trade secrets, to wit: "Plaintiff's customer identity and customer account information." In particular, the Ellington Affidavit attached to Plaintiff's complaint states that Defendant Martin saved to her personal Dropbox folder a document titled "
 
 Happy_Hour_with_Carolina_Bank_Sterling_-guest_list-03-22-12(1).xlsx
 
 ," which is purportedly "a list of 51 names and email addresses and is consistent with being a contact list for Sterling Title Company." Plaintiff maintains that "[b]ecause the Complaint clearly identifies a specific document which was misappropriated," i.e., the contact list, Plaintiff "has sufficiently pled misappropriation of trade secrets." Nevertheless, even assuming that Plaintiff's identification of this document is sufficient to allege the
 
 *602
 
 existence of a trade secret, we conclude as a matter of law that such a document does not merit trade secret protection under the Act.
 

 The guest list is identified as containing the "names and email addresses" of Plaintiff's "contact[s]." Although "information regarding customer lists ... can qualify as a trade secret under [the Act],"
 
 Krawiec v. Manly
 
 ,
 
 370 N.C. 602
 
 , 610,
 
 811 S.E.2d 542
 
 , 548 (2018), such is the case only to the extent that the information is not "generally known or readily ascertainable through independent development or reverse engineering."
 
 N.C. Gen. Stat. § 66-152
 
 (3)(a) ;
 
 Krawiec
 
 ,
 
 370 N.C. at 610
 
 ,
 
 811 S.E.2d at 548
 
 . Assuming that the 51 "contacts" are, in fact, Plaintiff's customers, Plaintiff fails to allege-and there is nothing in the pleadings to support-"that the lists contained any information that would not be readily accessible" to Defendant Martin but for her employment with Plaintiff.
 
 [2]
 

 *635
 

 Krawiec
 
 ,
 
 370 N.C. at 611
 
 ,
 
 811 S.E.2d at 549
 
 . Thus, because the complaint fails to identify Plaintiff's "customer identity and customer account information" as consisting of anything other than the e-mail addresses of 51 "contacts," Plaintiff has failed to allege a trade secret deserving of protection under the Act.
 
 See
 

 id.
 

 at 610
 
 ,
 
 811 S.E.2d at 548
 
 ,
 
 370 N.C. 602
 
 ("[I]n light of the requirements of subsection 66-152(3), a customer database [does] not constitute a trade secret when the record show[s] that defendants could have compiled a similar database through public listings such as trade show and seminar attendance lists." (quotation marks omitted)).
 

 Accordingly, the trial court properly dismissed Plaintiff's claim for violation of the North Carolina Trade Secrets Protection Act.
 

 IV. Remaining Claims
 

 Plaintiff's second cause of action is against Defendant Martin for breach of the implied duty of good faith and fair dealing under the Non-Compete Agreement. The trial court's dismissal of this claim was proper in light of our holding that the Non-Compete Agreement is unenforceable. Because Plaintiff cannot establish the existence of an enforceable contract, Plaintiff cannot state a claim that Defendant Martin "somehow breached implied terms" of that contract.
 
 Suntrust Bank v. Bryant/Sutphin Props., LLC
 
 ,
 
 222 N.C. App. 821
 
 , 833,
 
 732 S.E.2d 594
 
 , 603,
 
 disc. review denied
 
 ,
 
 366 N.C. 417
 
 ,
 
 735 S.E.2d 180
 
 (2012).
 

 *603
 
 Plaintiff next challenges the trial court's dismissal of its claim against Defendants for unfair and deceptive trade practices pursuant to
 
 N.C. Gen. Stat. § 75-1.1
 
 . In doing so, however, Plaintiff only argues that, because its complaint properly stated a claim for violation of the Trade Secrets Protection Act, the complaint therefore also sufficiently stated a claim for unfair and deceptive trade practices.
 
 See
 

 Drouillard v. Keister Williams Newspaper Servs., Inc.
 
 ,
 
 108 N.C. App. 169
 
 , 172,
 
 423 S.E.2d 324
 
 , 326 (1992) ("If the violation of the Trade Secrets Protection Act satisfies [the] three prong test [to maintain a cause of action for unfair trade practices], it would be a violation of
 
 N.C. Gen. Stat. § 75-1.1
 
 ."),
 
 cert. dismissed and disc. review denied
 
 ,
 
 333 N.C. 344
 
 ,
 
 427 S.E.2d 617
 
 (1993). Because we conclude that Plaintiff's complaint fails to state a claim for violation of the Trade Secrets Protection Act, the trial court's order cannot be disturbed on this ground.
 

 Lastly, Plaintiff does not challenge the trial court's dismissal of its conversion claim, nor does it challenge the trial court's dismissal of its breach of contract claim except as it relates to the non-compete and non-solicitation restrictions. Accordingly, Plaintiff has abandoned any such challenges not presented.
 
 See
 
 N.C.R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").
 

 Conclusion
 

 For the reasons contained herein, we affirm the trial court's order granting Defendants' motion to dismiss.
 

 AFFIRMED.
 

 Judges DIETZ and MURPHY concur.
 

 [1]
 

 As in
 
 Farr
 
 , the Non-Compete Agreement in this case does not define "customer or partner," and thus the restriction would "extend to clients' offices that never contacted" either Plaintiff or Defendant Martin.
 
 Farr
 
 ,
 
 138 N.C. App. at 282
 
 ,
 
 530 S.E.2d at 882
 
 ("If [the employer] worked for a client in one city, but that client has offices in
 
 other
 
 cities, the non-compete agreement ostensibly prevents [the employee] from working for that client in
 
 any
 
 of its offices, not merely the office with which [the employer] once worked. [This] factor[ ] work[s] to expand the reach of the covenant.").
 

 [2]
 

 In fact, as Defendants argued at the hearing on their motion to dismiss, the business at issue in this case "is the provision of title insurance. Your customers are real estate attorneys licensed in the state ... you're selling title insurance in. It's no secret who the potential customers of these companies are. You can go to the state bar and look up the real estate lawyers in your town."