BioSkryb Genomics, Inc. v. AClarity Genomics Inc., 2026 NCBC 51.

STATE OF NORTH CAROLINA

DURHAM COUNTY

BIOSKRYB GENOMICS, INC.,

        Plaintiff,

v.

ACLARITY GENOMICS INC., and
JASON A.A. WEST,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV000424-310

**ORDER AND OPINION
ON MOTION FOR
SUMMARY JUDGMENT**

1. Defendant Jason A.A. West has moved for summary judgment on his sole counterclaim against Plaintiff BioSkryb Genomics, Inc. (*See* ECF No. 83.) For the reasons discussed below, the Court **GRANTS** the motion.

> *Brooks, Pierce, McLendon, Humphrey & Leonard L.L.P., by Eric M. David, Kimberly M. Marston, Gabrielle L. Motsinger, and Kasi W. Robinson, for Plaintiff BioSkryb Genomics, Inc.*
>
> *Ellis & Winters, LLP, by James M. Weiss, Kelly Margolis Dagger, Curtis J. Shipley, and Dale Clemons, for Defendants AClarity Genomics Inc. and Jason A.A. West.*

Conrad, Judge.

I.
BACKGROUND

2. The Court does not make findings of fact when ruling on motions for summary judgment. The following background, drawn from the record evidence, is intended to provide context for the Court's analysis and ruling.

3. BioSkryb is a biotechnology company organized under Delaware law and based in North Carolina. West is one of BioSkryb's founders and was an officer and director from 2018 until 2024. (*See* Compl. ¶¶ 1, 6, 7, ECF No. 3.)

4. During his employment with BioSkryb, West executed two employment-related contracts: an Employment Agreement and a Confidential Information and Invention Assignment Agreement. Both agreements contain a clause that prohibits West from soliciting BioSkryb's customers and employees for a period of one year after the end of his employment. Both also contain a California choice-of-law clause. (*See* Confidentiality Agrmt. at 5, ECF No. 48.18; Emp. Agrmt. ¶ 9, ECF No. 48.19.)

5. In March 2024, BioSkryb removed West from his position as an officer. Although the company asked him to become a consultant, he declined. Around that time, West formed a new company called AClarity Genomics, Inc., and in May 2024, he resigned from BioSkryb's board of directors. At some point after West's departure, BioSkryb began to suspect that he had taken its trade secrets and other confidential information and was using them to establish AClarity as a competitor. (*See, e.g.*, Compl. ¶¶ 8–10.)

6. This case followed in early 2025 when BioSkryb sued West and AClarity, asserting a variety of claims grounded in allegations of unfair competition. In its first claim for relief, BioSkryb alleged that West had breached his contractual nonsolicitation restrictions. Immediately after filing suit, BioSkryb moved for a temporary restraining order in which it sought, among other things, to bar West from soliciting its customers and employees. The Court denied that motion. (*See, e.g.*, Mot. TRO at 3, ECF No. 5; *see also* Order on Mot. TRO, ECF No. 12.)

7. In his responsive pleading, West denied any wrongdoing (as did AClarity) and asserted a single counterclaim under California Business & Professions Code § 16600.5. In a nutshell, West alleges that his contractual nonsolicitation restrictions are unenforceable under California law and that BioSkryb's attempt to enforce those restrictions through this lawsuit violates section 16600.5. According to West, he is entitled to recover actual damages and reasonable attorney's fees as a result of the statutory violation. (*See generally* Ans. & Countercl., ECF No. 59.)

8. At the close of discovery, BioSkryb voluntarily dismissed its claims without prejudice, leaving West's counterclaim as the only remaining claim. West now seeks summary judgment as to BioSkryb's liability on that counterclaim but not as to damages. His motion is fully briefed, and the Court held a hearing on 21 April 2026. (*See* Mot. Summ. J., ECF No. 83.)

II.
ANALYSIS

9. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in its favor. *See Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 556 (2020); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011).

10. This dispute concerns California law—specifically, a pair of California statutes addressing noncompete clauses and similar restrictive covenants. Apart from a few exceptions that are not relevant here, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void" under California law. Cal. Bus. & Prof. Code § 16600(a). If an employer attempts to enforce a contract rendered void by section 16600(a), that employer "commits a civil violation," and the aggrieved employee "may bring a private action" to recover "actual damages" and "attorney's fees." *Id.* § 16600.5(d), (e).

11. West's position is straightforward. He contends that California law governs his contracts with BioSkryb, as stated in the contracts' choice-of-law clauses. Under California law, he contends, his nonsolicitation restrictions are void because they are restraints on trade, and BioSkryb violated section 16600.5(d) when it attempted to enforce them in this lawsuit.

12. BioSkryb concedes that the nonsolicitation restrictions are void if California law applies. But BioSkryb argues that the contracts at issue bear no connection to California and that applying California law would be contrary to North Carolina's public policy. On those grounds, it urges the Court to disregard the California choice-of-law clauses and instead conclude that North Carolina law governs the contracts.

13. "For the most part, contracting parties are free to choose which law will govern disputes arising out of their contract and where they will litigate those

disputes, just as they are free to choose the other terms of their bargain." *Karriker v. Harpoon Holdings, L.P.*, 2024 NCBC LEXIS 23, at \*4–5 (N.C. Super. Ct. Feb. 12, 2024). As our Supreme Court put it nearly fifty years ago, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262 (1980). Upholding the parties' choice of law protects their "justified expectations" and allows "them to foretell with accuracy what will be their rights and liabilities under the contract." Restatement (Second) of Conflict of Laws § 187 cmt. e (1971).

14. Only in "rare" circumstances will a court set aside the parties' chosen law. *IQVIA, Inc. v. Cir. Clinical Sols., Inc.*, 2023 NCBC LEXIS 1, at \*6 (N.C. Super. Ct. Jan. 6, 2023). If, for example, "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," then the choice-of-law clause is unenforceable. *Cable Tel Servs., Inc. v. Overland Contr., Inc.*, 154 N.C. App. 639, 643 (2002) (citation and quotation marks omitted). Similarly, the parties' choice of law is unenforceable if application of the "law of the chosen State" would "violate a fundamental policy of the state of otherwise applicable law." *Behr v. Behr*, 46 N.C. App. 694, 696 (1980) (citation and quotation marks omitted).

15. The undisputed facts show that BioSkryb and West had a reasonable basis for choosing California law to govern the contracts at issue. At the time the contracts were executed, BioSkryb was considering relocating from North Carolina to

California.  The company ultimately maintained its headquarters in North Carolina but established substantial, durable ties with California.  Among other things, one of BioSkryb's cofounders moved to California, the company held numerous in-person board meetings in California, and the company retained a California-based law firm as its primary corporate counsel.  In performing his duties, West also traveled to California at least twenty-five times to conduct business on BioSkryb's behalf.  (*See* Decl. J. West. ¶¶ 4, 5, 7, 9, 10, ECF No. 108.1.)

16.    In addition, applying California law would not be contrary to a fundamental policy of North Carolina (assuming, without deciding, that North Carolina law would apply in the absence of the choice-of-law clauses).  "To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state."  *Boudreau v. Baughman*, 322 N.C. 331, 342 (1988) (citing cases "involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor").  Nothing of the sort is at issue here.  Indeed, North Carolina's courts have recognized that "restrictive employment covenants . . . are disfavored."  *Aeroflow Inc. v. Arias*, 2011 NCBC LEXIS 21, at *16 (N.C. Super. Ct. July 5, 2011); *see also Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 279 (2000) ("Covenants not to compete between an employer and employee are not viewed favorably in modern law." (citation and quotation marks omitted)).

17.    Accordingly, the Court concludes that the parties' choice of law is enforceable.

18.     Applying California law, West's contractual nonsolicitation restrictions are void.  BioSkryb does not dispute that it attempted to enforce these void restrictions, as prohibited by section 16600.5.  It follows that BioSkryb is liable for "a civil violation."  Cal. Bus. & Prof. Code § 16600.5(d).

19.     BioSkryb tries to avoid this result by arguing that West's employment was based in North Carolina (not California) and that the Court should not give extraterritorial effect to section 16600.5.  It is true that "legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791, 796 (2008) (cleaned up).  But section 16600.5 is clear: "An employer or former employer shall not attempt to enforce a contract that is void under [section 16600(a)] regardless of whether the contract was signed and the employment was maintained outside of California."  Cal. Bus. & Prof. Code § 16600.5(b).  As one federal district court recently observed, this language is "wholly unambiguous in its intent to extend the application of this section of the California Business and Professions Code to outside of the state." *FBC Mortg., LLC v. New Am. Funding, LLC*, 2024 U.S. Dist. LEXIS 250486, at *14 (D. Ariz. Apr. 22, 2024).  The Court agrees and concludes that section 16600.5's plain language overcomes the presumption against extraterritorial effect.

20.     In sum, West may assert a claim under section 16600.5 even though his employment was in North Carolina, there is no genuine issue of material fact for a jury to decide with respect to BioSkryb's liability to West, and BioSkryb is liable as a matter of law.

## III.
## CONCLUSION

21.     For all these reasons, the Court **GRANTS** West's motion.  The Court enters summary judgment in West's favor as to BioSkryb's liability on the counterclaim under section 16600.5 of the California Business and Professions Code, reserving for further proceedings the resolution of the amount of damages to be awarded to West.

22.     No later than 22 June 2026, the parties shall confer and jointly file a status report concerning appropriate procedures for addressing outstanding issues relating West's demands for actual damages and for an award of reasonable attorney's fees with respect to his counterclaim.

**SO ORDERED**, this the 8th day of June, 2026.

 /s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases